## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

ROY WILLIAM BURRIS, JR.,                    )
                                            )
      Petitioner,                            )
                                            )
v.                                          )          No. 4:23 CV 243 RWS
                                            )
UNITED STATES OF AMERICA,                   )
                                            )
      Respondent.                            )

## MEMORANDUM AND ORDER

This matter is before me on the Motion to Vacate, Set Aside or Correct

Sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Roy William Burris, Jr.

with the assistance of counsel.  On February 12, 2020, a jury convicted Burris of

conspiracy to distribute and possess with intent to distribute five kilograms or more

of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1).[1]  ECF 423 in Criminal

Case No. 4:17 CR 95 RWS.

Burris was sentenced on September 17, 2020, to a term of imprisonment of

300 months, followed by five years of supervised release.  ECF 463 in Criminal

Case No. 4:17 CR 95 RWS.  This was a substantial variance from Burris's

advisory guidelines range of life imprisonment.  Burris appealed to the Eighth

---

[1] Oscar Dillon, III and Michael Grady were indicted as co-defendants.  The Indictment against
Grady was dismissed without prejudice on June 12, 2017.  ECF 134 in Criminal Case No. 4:17
CR 95 RWS.  Dillon and Burris were tried together.  Dillon was acquitted.  ECF 422 in Criminal
Case No. 4:17 CR 95 RWS.

Circuit Court of Appeals, ECF 467 in Criminal Case No. 4:17 CR 95 RWS, which

affirmed his conviction and sentence on January 6, 2022.  ECF 494, 495 in

Criminal Case No. 4:17 CR 95 RWS.  The mandate issued on February 10, 2022.

ECF 496 in Criminal Case No. 4:17 CR 95 RWS.

On February 28, 2023, Burris filed the instant motion.  ECF 1.  The motion

raises three claims of ineffective assistance of counsel:

1) trial counsel had an actual conflict of interest;

2) "further ineffective assistance of counsel and conflict of interest issues"
based on counsel's trial schedule and family issues; and

3) ineffective assistance of appellate counsel because trial counsel
represented petitioner on appeal.

ECF 1.  The government opposes Burris's motion on the merits.  ECF 13.  Burris

filed a reply brief in support of his motion, ECF 20, and the issues are fully briefed.

Burris's claims are meritless and will be denied for the reasons set out

below.

## Discussion

### A. Need for Evidentiary Hearing

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion

unless the motion and the files and the records of the case conclusively show that

he is entitled to no relief."  *Holder v. United States*, 721 F.3d 979, 993 (8th Cir.

2013) (citation modified).  "No hearing is required where the claim is inadequate

on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (citation modified).  In conducting this inquiry, courts may dismiss allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (citation modified).

Because Burris's claims are conclusively refuted by the record in this case, they are denied without an evidentiary hearing as follows.

**B. Standard for § 2255 Relief**

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255; *Watson v. United States,* 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek postconviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.").  A § 2255 motion "is intended to afford federal prisoners a

3

remedy identical in scope to federal habeas corpus." *United States v. Wilson,* 997

F.2d 429, 431 (8th Cir. 1993) (citation modified).

### C. Factual Background

On appeal, the Eighth Circuit found the underlying facts in this case to be as

follows:

> Burris and Oscar Dillon, III, were tried together on a charge of conspiracy to distribute cocaine. According to evidence at trial, Burris was involved in the distribution of cocaine in both California and Missouri. Proceeding chronologically, the evidence begins in February 2016. At that time, Burris attempted to pass through airport security screening at the Long Beach Airport in California with a bag containing a pistol. Police officers arrested Burris and seized from his person seven cellular phones, cash wrapped in a rubber band, gift cards, and "miscellaneous papers with numbers and notes on them." The latter appeared to be notes of "payments and money owed." Investigators later obtained a search warrant for the seven cell phones and found text messages, photos, and videos that connected Burris with a conspiracy to distribute cocaine.

> On March 30, 2016, after Burris was released on the February arrest, investigators conducted surveillance at a residential complex in Hawaiian Gardens, California. Officers observed Burris participate in an exchange of two bags between two cars, and they believed that it was a drug transaction. Police sought to arrest Burris, but he tried to evade them by driving his car onto a sidewalk and toward an officer. Police eventually apprehended Burris and took him into custody.

> On the same day, officers executed a search warrant at the home of Burris's mother in the residential complex. They found five kilograms of cocaine, $124,900 in cash, and a firearm case for the pistol that officers seized from Burris at the Long Beach Airport.

> A confederate of Burris's, Edgar Roque, testified that he and Burris had coordinated a Hawaiian Gardens drug transaction in March 2016 after which Burris was arrested. Several witnesses at trial described a five-kilogram cocaine sale that occurred between Roque and Burris on that day. Roque

explained that his cocaine supplier, Cazares, had terminated the business relationship after the Hawaiian Gardens seizure, and that Roque found a new supplier named Avendano. Roque and Burris then traveled to Mexico to meet with Avendano about distributing cocaine in St. Louis. After the meeting, Avendano agreed to ship ten kilograms of cocaine to St. Louis for Roque and Burris to distribute there.

In September 2016, investigators identified a UPS package containing ten kilograms of cocaine that was delivered to Oscar Dillon, III, in St. Louis. They arrested Dillon and found that he possessed five cellular phones. One of the phones contained text messages in which Burris provided Dillon with information and direction about the delivery of cocaine in St. Louis. Before the delivery, Dillon asked Burris to specify the time of delivery. Burris informed Dillon of the amount of cocaine to be delivered, told Dillon that he should be at the delivery location to accept the package, answered a question from Dillon about who was allowed to accept the package, and updated Dillon on the status of the delivery.

After a trial, a jury convicted Burris on the drug trafficking conspiracy charge. The district court resolved several disputes under the sentencing guidelines, and sentenced Burris within the advisory guideline range to a term of 300 months' imprisonment.

*United States v. Burris*, 22 F.4th 781, 784 (8th Cir. 2022).

**D. Relevant Procedural Background**

This was a complex case involving multiple indicted and unindicted co-conspirators, many of whom were also involved in other criminal cases pending in this district and elsewhere.  The docket sheet in the underlying criminal case exceeds 500 entries.  The primary basis for the instant motion is retained counsel Beau Brindley's representation of Burris while also representing an unindicted co-conspirator (Eric Avendano-Guzman) in a criminal case pending in the Northern District of Illinois.  *See United States v. Avendano-Guzman*, 1:17CR234 SDY

(N.D. Ill.).[2]  Eric Avendano-Guzman (hereinafter "Guzman" for ease of reference) is the brother of Calvin Avendano, Roque and Burris's Mexican cocaine supplier. Both Avendano and Guzman were named as defendants in the Illinois case.  The case remains pending against Avendano, who is a fugitive.

Brindley's potential conflict of interest was first raised with the Court through a motion filed by the government.  ECF 156 in Criminal Case No. 4:17 CR 95 RWS.  The government alleged a potential conflict of interest, citing Guzman's status as an unindicated co-conspirator in the case and alleging that Brindley would potentially be unable to adequately explore plea and cooperation deals with Burris which might disadvantage Guzman.  After the first hearing on the motion, the magistrate judge issued an order on November 30, 2017, determining that a potential conflict of interest existed between Burris and Brindley's concurrent representation of Guzman.  ECF 192 in Criminal Case No. 4:17 CR 95 RWS.  For that reason, the magistrate judge appointed Joel Schwartz as counsel to independently advise and represent Burris with respect to the potential conflict issue and the possibility of waiving the conflict.  *Id.*  The magistrate judge also set a conflict waiver hearing, which was held on December 13, 2017.

---

[2] Although Burris refers to this as "joint representation," under Federal Rule of Criminal Procedure 44(c)(1), joint representation occurs when "two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13."  That is not the case here, as Guzman was not a defendant in this case, and Burris was not a defendant in the Northern District of Illinois.

Brindley did not appear for the conflict waiver hearing.  Burris was represented by Schwartz.  ECF 502 in Criminal Case No. 4:17 CR 95 RWS.  In sealed proceedings on the record, the magistrate judge placed Burris under oath and proceeded to question him at length about the potential conflict and waiver issues.  *Id.*  Given its importance to this case, the hearing is set out in full below:

> THE COURT: Okay. So we're on the record in 14:CR-0095, USA versus Roy Burris.  Just come on up, Mr. Burris. So this is Part 2 of the conflict hearing. The first part of the conflict hearing we had awhile ago and I issued an order. And the order said in essence that there was a potential conflict with   Mr. Brindley. And the potential conflict related to Mr. Brindley's representation of Eric Avendano up in the Northern District of Illinois. So the procedure, Mr. Burris, in all cases like this is when there's a potential conflict where the Court thinks that the defendant would benefit from some additional advice outside of the government being here and all of that, an independent counsel is appointed. And that's why I appointed Mr. Schwartz. Now, I want you to understand that Mr. Schwartz is one of the best criminal defense lawyers in St. Louis, okay.  And I wanted you to have good counsel before we go on the record about this conflict. I didn't pull somebody off the street or give you somebody that I didn't think that could handle this for you, okay. Because I want to be sure that you get the best advice that you need before you make a decision here. Okay?
>
> So, first of all, let me get an announcement here from the lawyers who are present in the courtroom.
>
> MR. HOAG: Dean Hoag, Mike Reilly for the government.
>
> MR. SCHWARTZ: Joel Schwartz on behalf of Mr. Burris.
>
> THE COURT: Mr. Reilly?
>
> MR. REILLY: I'm sorry, Your Honor. Yes, Your Honor, Mike Reilly on behalf of the government.

THE COURT: Okay. So what I'm going to do right now is I'm going to ask everybody to leave the courtroom who isn't connected to giving Mr. Burris advice and who isn't security, okay. So I'm going to ask the government attorneys to exit the courtroom and then I want the courtroom sealed. (Government counsel excused from the courtroom. Courtroom sealed.)

THE COURT: Okay. So, Mr. Burris, there are some questions that I'm going to ask you so I want to put you under oath, okay. So I'm going to ask our clerk to administer the oath. So if you'll raise your right hand, please.

THE DEFENDANT: I usually don't swear, but –

THE COURT: Okay. Affirmed is fine.

THE DEFENDANT: Affirm.

(Defendant affirmed.)

THE COURT: Okay. So, Mr. Burris, what I've said so far about the procedure in a conflict case where there's a perceived conflict, do you understand that so far?

THE DEFENDANT: (Nodding.)

THE COURT: Okay. You need to make a verbal response.

THE DEFENDANT: Yes. Yes, Your Honor.

THE COURT: And this part of the record is going to be sealed as well, okay. So even though I have a court reporter here, we're going to seal this part of the record, okay. So what -- okay. Go ahead.

THE DEFENDANT: I feel uncomfortable speaking without my attorney being here.

THE COURT: Okay. So your attorney was given notice of this proceeding, okay. Nothing has been kept from him. He was given a notice of the proceeding. He was given the order of the conflict, okay. So you are – what's going to happen here is you're going to have the right to waive your right to conflict-free counsel, okay. So I'm not telling you right now – I'm

8

not telling you that you can't have Mr. Brindley as your lawyer. But what we're going to do is make sure, and I'm going to ask Mr. Schwartz whether he has advised you of your right to conflict-free counsel and other pertinent matters.

And I'm going to ask you to tell me whether or not that took place. Because the situation is this, if later on down the road you decide that Mr. Brindley was not acting in your interest, then that could cause a problem in the case, okay. So you need to think now about whether or not you want a lawyer who has no connection to all of these various players in the case; the case here, the case in the Northern District of Illinois, the case – there's another case, you know, with Dillon here in St. Louis. And Brindley has got a connection to all these people, okay.

So the reason I appointed Mr. Schwartz for a limited purpose -- I did not appoint him to represent you in this case except for this purpose. This is what's called a limited appointment. No other – he's not representing you on anything else other than to simply give you advice about your right to conflict-free counsel and what it means not to have conflict-free counsel. Because if you choose to go forward with Mr. Brindley, you are going to have a lawyer who has serious conflict potential because he's representing an unindicted coconspirator in a case in the Northern District of Illinois. He's an unindicted coconspirator in your case here. Mr. Brindley is also representing somebody in another case in this district that Dillon and Grady are involved in. So he's got his hands in a lot of different cases that are circling around you. And you do have the right to have him as your lawyer, and I have not taken him off the case, he is still your lawyer. He is getting everything in this case that your lawyer would get.

But when I ask you about whether or not you want to file a waiver, and I am using Mr. Brindley's waiver form here that he created for you previously, but I want to make sure that you have every possibility here to have a lawyer that is working in your interest, okay. Because you've got a lot riding on the line here.  You know it more than anybody else. And you deserve like any other defendant to have a lawyer that is working for you, okay, and doesn't have in the back of his mind -- and I'm not saying Mr. Brindley lacks integrity or anything like that, I'm just saying it's human nature when you've got a lot of different people that you're trying to do things for it's hard to balance those interests. That's why we take so carefully conflict issues.

9

That other case that Dillon and Grady are in, that's got like 25 defendants, something like that. Mr. Schwartz is one of the few people in town who is not involved in that case. That's why I -- aside from my respect for his abilities, that's why I appointed him here because he has nothing to do with that other case. He has nothing to do with the case in the Northern District of Illinois.

So I know that you feel like Mr. Brindley is somebody that you can trust and you're loyal to and you feel he's loyal to you. I'm not trying to dismiss those attitudes that you have. That is fine. The only thing that I want for you is for you to make this decision having gotten advice from someone who doesn't have a connection to any of these cases, okay.

So, like I said, Mr. Brindley is still your lawyer. The only thing Mr. Schwartz is here for is for this very limited purpose. He's not going to give you a defense, he's not doing anything else for you.

So let me ask Mr. Schwartz, were you able to have a discussion with Mr. Burris or was Mr. Burris not really interested in hearing from you at this time?

MR. SCHWARTZ: We had a discussion privately yesterday.

THE COURT: Okay.

MR. SCHWARTZ: We talked through some of these issues. It was somewhat of a brief discussion, but the gist of what you had just informed him was discussed, and Mr. Burris informed me that he wished to continue with Mr. Brindley and not explore a conflict any further.

THE COURT: Okay. All right. So Mr. Brindley --  not Mr. Brindley, Mr. Burris. I'm sorry. So we can – we can go through this. What I'm going to do is I'm going to ask you a series of questions so that on the record we make sure that you understand the nature of the conflict here. Okay?

THE DEFENDANT: Yes.
THE COURT: Okay. Mr. Schwartz, can you raise that mic up a little bit more for him. There you go. Okay. So, first of all, Mr. Burris, I want to give you the opportunity right now if you want to sit here in the courtroom if you want to talk with Mr. Schwartz just a little bit more about some of the things

I talked about without, you know, the government here or anything. It's not going to be on the record. I will give you a little bit of an opportunity here while you have access to him to ask some questions if you want to do that. Would you like to do that for a little bit?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. All right. So you feel that you have an understanding of the issues here?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And you know that the government has asserted that Mr. Avendano, I guess there's two of them, Eric and another one, that these gentlemen are unindicted coconspirators in this case right now, this 0095 case, you understand that?

THE DEFENDANT: I'm hearing it, yeah.

THE COURT: So do you know what it means to be an unindicted coconspirator?

THE DEFENDANT: Can you explain that to me?

THE COURT: Okay. So I'm going to ask Mr. Schwartz to just explain it on the record first, okay. Go ahead, Mr. Schwartz.

MR. SCHWARTZ: It would be somebody who is theoretically involved in the case but has not been charged in this district, somebody who ultimately could be charged if there are connections to the district who they allege was involved in the conspiracy in some way, shape, or form and the government has chosen not to indict them for various number of reasons which we don't know at this point.

THE COURT: Okay. So Mr. Avendano could pop up in this case in different ways. For instance, he could end up being a witness in this case. He could be sitting on that witness stand in your trial, and your lawyer, Mr. Brindley, would have to cross-examine him. So he would be in the position of cross-examining his own client in your case.

Now, I want you to think about – you're an intelligent person, you think about what it would mean if you were the lawyer and that's your client on the stand. And you know that what he says, he's got a lot riding either way on his case up in the Northern District of Illinois, okay. So that's the kind of scenario that I want you to imagine. That's one scenario.

Another scenario is that the government wants to offer you a deal. I'm not saying this -- I don't know anything about any of this, but this is a possible scenario:      The government wants to offer you a deal, and part of that deal would be you testifying in the Northern District of Illinois -- just a minute -- against Mr. Avendano. And Mr. Brindley is your lawyer and Avendano's lawyer. It's going to be very hard for Mr. Brindley to separate Mr. Avendano's interest from yours. That's the problem.

Now, I know because Mr. Brindley told us the last time that you have no intention of cooperating with the government. He stood here and told me that. Okay. That may be true when he said it; it might be true today. I don't know what it's going to look like in the future.

THE DEFENDANT: It is very much so true. I'm not willing to cooperate with the government.

THE COURT: I know you're not willing to cooperate with the government, and I know you believe that's what you say. And I'm not telling you to cooperate with the government. I don't care. What I want you to have is the options that you need, okay. I don't want you to have to foreclose an option for yourself, okay. That's the concern here that the advice that you get from Mr. Brindley forecloses an option for you in that you wouldn't get advice that is just for Roy Burris and not for one of these Avendanos and not for Dillon and not for Grady or any of these other people that are floating around this case. Do you understand what I'm saying?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. All right. So that's one thing. So you've got the prospect of one of these Avendanos popping up as a witness. You've got the prospect of Mr. Burris having to give you advice that could negatively impact Mr. Avendano. Okay.

Then you've got Mr. Burris advising Mr. Avendano – I'm sorry, Mr. Brindley advising Mr. Avendano in ways that could negatively impact you. Okay. So it's not just advising you in ways that could negatively impact Mr. Avendano or not, but what is he telling Avendano?

So the other issue is there's a lot of confidential information that you are going to disclose to Mr. Burris -- to Mr. Brindley -- you two have these B names. So you're going to be disclosing confidential information to him. And that's going to be in his head. It is difficult to separate that out when he is also advising Avendano.

So the best of lawyers would have some serious problem separating -- keeping all of this separate and keeping the interest of all of their clients separate. We go to a great deal of trouble in the federal court system to make sure that people have conflict-free counsel, okay. I've spent a lot of time on this case alone making sure that you have conflict-free counsel. We have a giant list of lawyers who are private lawyers who do work for the court system because our federal public defenders cannot represent everybody conflict free. And it's so important to us that we call in the bar to help out in that regard. We appoint private lawyers so that we avoid conflicts with the federal public defender. And it's very costly, but it's so important that that's what we do. So this isn't just about you; this is a constitutional right that you have. And I'm taking the time for you so that you understand how important this is. Okay?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. I think that I have laid out most of the significant potential conflicts, but, Mr. Schwartz, if you can think of other scenarios that you think Mr. Burris should hear before he has the opportunity to waive his -- waive Mr. Brindley's potential conflict here, I'd appreciate hearing on the record from you.

MR. SCHWARTZ: Your Honor, there's numerous potential conflicts. I don't know -- what the Court listed is essentially what we discussed, and those are the very real possibilities. He and I discussed those yesterday and he was as emphatic yesterday as he is today. Unless something has changed in his mind, he informed me he has no desire whatsoever -- he wants to continue with Mr. Brindley and wishes to continue within his waiver of

conflict. And he was very, very clear about that. If something has changed I'm sure he'll inform us right now.

THE COURT: Okay. All right. So, Mr. Burris, having heard what I've had to say and having listened to Mr. Schwartz in the limited manner that he's been able to speak with you, do you feel like you want to go ahead and waive the conflict of interest?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. So one of the things I want you to know is that if a time comes when you aren't comfortable with Mr. Brindley anymore, then you must let somebody know so that you can have another lawyer either appointed or given a chance to hire another lawyer. But as the time goes on, it's going to be harder to do that, okay.

All right. So I'm going to hand you this document. I want Mr. Schwartz to look at it first. This is the format, Mr. Schwartz, that Mr. Brindley put together for Mr. Burris in the previous conflict waiver.

(Waiver signed.)

Okay. I'm going to ask you a couple of questions about the waiver. I think just for this piece I'm going to ask the U.S. Attorneys to come back in the room so we can go over just the waiver piece, Mr. Burris, okay.

MR. SCHWARTZ: Do you want him to hang onto it?

THE COURT: He can sign it.

MR. SCHWARTZ: He did.

THE COURT: Just hang onto it and stay there. So we're just going to go over the standard discussion of waiver that we go through when anybody waives any right.

(Mr. Hoag and Mr. Reilly reentered courtroom.)

THE COURT: Okay. So Mr. Hoag is back in the room. And, Mr. Hoag, we've had an on-the-record but sealed discussion with Mr. Burris and Mr.

Schwartz. Mr. Burris is going to waive the potential conflict here. I'm going to ask him a couple of questions related to waiver that we ask in every case and at the end of it I'll let you put anything on the record that you wish to put on the record, okay.

MR. HOAG: But we're not going to put anything on the record, Judge.

THE COURT: Okay. All right. Mr. Burris, you have signed the document, correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you've done that with full knowledge of the relevant issues with respect to the conflict, correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you feel like you understand the issues related to the conflict, right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Has anybody threatened you in any way to get you to sign this waiver?

THE DEFENDANT: No, Your Honor.

THE COURT: And has anybody made any promises to you that if you waive this conflict of interest you'll get some kind of special benefit?

THE DEFENDANT: No, Your Honor.
.
THE COURT: Okay. And you were able, given the opportunity to ask the independent counsel any questions that you wanted; is that right?

THE DEFENDANT: Yes, I was given the opportunity.

THE COURT: Okay. And you feel like you've had the advice that you need to be able to waive your right to conflict-free counsel; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. I don't have anything else to put on the record at this time. Do either counsel wish to put anything on the record at this time?

MR. HOAG: No, Your Honor.

MR. SCHWARTZ: No, Your Honor. At this point I would simply ask for oral leave to withdraw, supplementing that written later.

THE COURT: Okay. I'm going to grant your leave to withdraw. And if you'll file a written waiver -- I mean, a written withdrawal that would be appreciated.

MR. SCHWARTZ: Thank you, Your Honor.

ECF 502 in Criminal Case No. 4:17 CR 95 RWS.   Burris's signed waiver of

conflict of interest appears in the record as ECF 196 and states as follows:

> I have been informed of a potential conflict of interest arising as a result of
> the association of Eric J. Avendano-Guzman, an 'unindicted co-conspirator,'
> with my current attorney, Beau Brindley.  The Court has informed me of the
> nature of that potential conflict and how it could impact my representation.
> Having been so informed, I want Beau Brindley to continue to serve as my
> lawyer and hereby waive the potential conflict of interest in his
> representation of me.

ECF 196 in Criminal Case No. 4:17 CR 95 RWS.   In accordance with Burris's

express request, Brindley continued his representation of Burris throughout the

case, which included pretrial hearings and rulings on evidentiary matters before the

magistrate judge.  On March 23, 2018, Burris filed a motion to suppress evidence,

and an evidentiary hearing was held on the motion before the magistrate judge on

April 17, 2018.  ECF 227, 244 in Criminal Case No. 4:17 CR 95 RWS.  Burris

then filed another motion to suppress additional evidence following the hearing. ECF 251 in Criminal Case No. 4:17 CR 95 RWS.  The magistrate judge issued a Report and Recommendation on October 18, 2018, recommending the motions be denied, and I adopted the Report and Recommendation without objection on December 19, 2018.  ECF 273, 284 in Criminal Case No. 4:17 CR 95 RWS.

Defendants also requested, and were granted, extensions of the trial setting. On January 3, 2020, I held a telephonic status hearing with counsel only to discuss co-defendant Dillon's motion to continue.  ECF 427 in Criminal Case No. 4:17 CR 95 RWS.  During that hearing, Brindley indicated that Guzman possessed "exculpatory information" related to Roque and mentioned the potential conflict of interest which he reminded the Court had already been waived by Burris.  *Id.* Brindley also indicated that Burris did not oppose the request for continuance and that Burris would sign a speedy trial waiver, which he subsequently did.[3]  That waiver appears in the record as ECF 368.

The six-day jury trial began on February 3, 2020.  The government called 15 witnesses and introduced nearly 500 exhibits.  The evidence introduced at trial against Burris included testimony from co-conspirators and investigating law

_____

[3] Burris's brief incorrectly claims that Brindley promised Burris would sign another conflict waiver.  ECF 1-3 at 21.  He did not.  The transcript of the hearing makes clear that the waiver Brindley promised Burris would sign was a speedy trial waiver, not another conflict of interest waiver.

enforcement officers, wiretaps in both recorded and text form, surveillance, confiscated drugs, evidence of a firearm, and incriminating videographic and photographic evidence.

Defendants did not call any witnesses.  Guzman, who was in custody awaiting sentencing in the Illinois case, was not called as witness by either side. After deliberation, the jury returned a guilty verdict as to Burris for conspiring to distribute cocaine.  Brindley filed Burris's appeal to the Eighth Circuit, which affirmed Burris's conviction and sentence.

### E. Ground One: Ineffective Assistance of Counsel Claim Based on Conflict of Interest

Burris claims that his attorney rendered ineffective assistance of counsel at all stages of the proceedings, primarily due to Brindley's simultaneous representation of Burris and Guzman.

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  "'A non-indigent criminal defendant's Sixth Amendment rights encompass the right to be represented by the attorney selected by the defendant.'" *United States v. Edelmann*, 458 F.3d 791, 806 (8th Cir. 2006) (quoting *United States v. Gonzales-Lopez*, 399 F.3d 924, 928 (8th Cir. 2005)).  The general rule is that "defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice."  *Id.* (citation modified).

18

However, "the right to retain counsel of one's choice is not absolute." *Id.* (citation modified). "The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial." *Bonin v. California*, 494 U.S. 1039, 1044, (1990). Thus, the "Supreme Court has recognized that the right to counsel guaranteed by the Sixth Amendment includes the 'right to representation that is free from conflicts of interest.'" *Atley v. Ault*, 191 F.3d 865, 869 (8th Cir. 1999) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). When an attorney has a conflict of interest, that attorney violates his duty of loyalty to his client and "fails to provide effective assistance of counsel." *Id.*

However, a defendant "may waive his right to the assistance of an attorney unhindered by a conflict of interests." *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5 (1978). The Eighth Circuit has "consistently held that the right to effective assistance of counsel may be waived, provided that waiver is knowing, voluntary and intelligent." *Henderson v. Smith*, 903 F.2d 534, 536 (8th Cir. 1990). "Once a valid waiver is found to exist, the Court need not inquire whether an 'actual conflict of interest exists.'" *Id.* (quoting *United States v. Bryant,* 766 F.2d 370, 378 (8th Cir. 1985)) (citation modified).

There is no need to determine whether an actual conflict of interest was created by Brindley's representation of both Burris and Guzman because Burris made a knowing, voluntary, and intelligent waiver of his right to conflict-free assistance of counsel.  *See Noe v. United States,* 601 F.3d 784, 789–92 (8th Cir. 2010); *United States v. Brekke,* 152 F.3d 1042, 1045–46 (8th Cir. 1998).[4]  As conclusively demonstrated by the transcript of the conflict hearing, Burris affirmatively and unequivocally waived his conflict of interest claim relating to Brindley's concurrent representation of Guzman and Burris after receiving the advice of experienced independent counsel and sufficient opportunity to consider that advice.  Burris did so knowingly and voluntarily during an on-the-record colloquy with the magistrate judge, who thoroughly explained to Burris how Brindley's possible conflict of interest could impact his representation of Burris in the underlying criminal case, including the specific problem of Guzman's possible testimony as a witness and the disclosure of confidential information.  Burris engaged the magistrate judge during the hearing, asking her to define the term "unindicted coconspirator."  The Court requested independent counsel provide the explanation on the record, and he did so.  Independent counsel confirmed that he, too, had explained to Burris how Brindley's simultaneous representation of Burris

---

[4] As explained below in connection with Ground 2, Burris cannot demonstrate an actual conflict either because he cannot meet the standards set out by the United States Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335 (1980).

and Guzman could impact him. The magistrate judge informed Burris of his right to obtain conflict-free counsel and its importance as a constitutional guarantee. Despite all the advice from independent counsel and the explanation by the magistrate judge, Burris emphatically remained "very, very clear" that he wanted to continue with Brindley as his counsel and waive any potential conflict of interest.

Only after the extensive on-the-record discussion with Burris and independent counsel did the magistrate judge agree to accept a written waiver of conflict of interest from Burris. And after Burris signed the conflict waiver the magistrate judge remained on the record to confirm with Burris that he signed the waiver of his own free will after being fully informed of the consequences and without any threats or coercion to do so. The written waiver states that Burris is aware of the potential conflict created by Brindley's representation of both Guzman and him, and after being fully informed by the Court of that potential conflict and how it could impact his representation, Burris wants Brindley to continue representing him and waives the potential conflict of interest.

Burris cannot now contradict his prior sworn testimony and written waiver with his affidavit submitted in support of his 2255 motion, as "solemn declarations in open court carry a strong presumption of verity." *Smith v. Lockhart*, 921 F.2d 154, 157 (8th Cir. 1990) (citation modified). In his affidavit, Burris avers that he

21

did not "fully understand" that Brindley represented Guzman while also representing him, that if Brindley ever gave the Court the impression he knew about the conflict that such representation by Brindley was "manifestly false," and that he signed the conflict waiver "at his lawyer's behest and without knowing the facts." ECF 1-5 at 2.  These allegations are completely untethered from -- and conclusively refuted by -- the extensive record in this case.  The record shows that it was not Brindley but **Burris himself** who "gave this Court the impression that Burris was aware of the conflict of interest which existed by Mr. Brindley's representation of two clients at the same time." *See* ECF 1-5.  Brindley did not even appear for the conflict hearing, much less participate in it.  Instead Burris was appointed one of the bar's most experienced and well-respected criminal attorneys to independently advise him about whether to waive the potential conflict of interest and to represent him at the conflict hearing.  Burris knowingly and willingly waived the conflict of interest after receipt of that independent advice and an informed on-the-record discussion with the Court about the consequences of such a waiver.

That Burris knowingly and voluntarily waived the potential conflict of interest created by Brindley's representation of both Guzman and him is further underscored by the fact that Burris previously waived a potential conflict of interest between Brindley and his co-defendant Grady.  On April 5, 2017, the

22

government filed a motion for inquiry into a potential conflict of interest regarding
a pre-existing relationship between Grady and Brindley. ECF 61 in Criminal Case
No. 4:17 CR 95 RWS. The government presented evidence that Grady facilitated
the referral of Burris to Brindley. ECF 96 in Criminal Case No. 4:17 CR 95 RWS.

On May 16, 2017, a hearing was held before the magistrate judge. Burris
was present with Brindley. The magistrate judge explained that a different
magistrate judge in a separate case found that Brindley and Grady had a prior
financial relationship relating to Brindley's law practice and that Grady worked
as a paralegal and provided business to Brindley. ECF 113 in Criminal Case
No. 4:17 CR 95 RWS. Brindley then explained that Grady had, in the past,
referred clients to Brindley and that Grady and Brindley had both worked for
some of the same clients, with Brindley providing legal representation and
Grady working as investigator in an independent contractor capacity for
Brindley. *Id.* Burris was then sworn and the magistrate judge advised him of
his right to conflict-free counsel and of the nature of the conflict arising from
Brindley's financial relationship with Grady. *Id.* The magistrate judge also
cautioned Burris on the consequences of a waiver:

> Q: So if you waive the conflict, that means you are giving up
> any challenge – let's just say you go to trial and you lose and
> Mr. Brindley is your lawyer at the trial, and then on appeal you
> want to say, wait a minute, he wasn't working for me, he was
> working for my co-defendant, Grady, and Grady was
> cooperating with the Government, and he knew that because he

> knows Grady, and he didn't tell me that and I was left in the
> dark, okay, and so I should have my case reversed. But when
> you waive a conflict, you don't have that anymore. You can't
> say that. Those are the stakes for you. The stakes for you is that
> later on, not that Mr. Brindley won't do everything for you
> now, but later on something could happen and you won't have
> the opportunity to challenge what you found out about what
> they were doing, okay? It causes—it can cause lingering doubts
> about the relationship. And those are the kind of things that you
> need to be aware of. Is that clear to you?
>
> A: Yes, Your Honor.

*Id.* At the conclusion of the hearing, the magistrate judge took the matter under

advisement. She subsequently determined the potential conflict was waivable

and set a hearing for Burris's waiver of conflict of interest. ECF 145 in

Criminal Case No. 4:17 CR 95 RWS.

The hearing on Burris's waiver of conflict of interest related to Brindley's

relationship with Grady was held on July 18, 2017. ECF 148 in Criminal Case No.

4:17 CR 95 RWS. Burris was present and represented by Brindley. *Id.* After

being sworn and an on-the-record discussion with the magistrate judge and counsel,

Burris signed the following waiver of the conflict of interest:

> I have been informed of a potential conflict of interest arising as
> a result of the association of my former and possibly future co-
> defendant Michael Grady with my current attorney, Beau
> Brindley. The Court has informed me of the nature of that
> potential conflict and how it could impact my representation.
> Having been so informed, I want Beau Brindley to continue to
> serve as my lawyer and hereby waive the potential conflict of
> interest in his representation of me.

ECF 149 in Criminal Case No. 4:17 CR 95 RWS.  The magistrate judge accepted the waiver and made a finding, after thorough inquiry, that it was made voluntarily and intelligently.  ECF 148 in Criminal Case No. 4:17 CR 95 RWS.

Burris, *not once*, *but twice* waived potential conflicts of interest because he was insistent that Brindley represent him at trial.  He voluntarily did so on each occasion after providing sworn testimony and written confirmation to the Court that he understood the potential consequences of waiving the conflicts and agreed to accept them, and he cannot now contradict his numerous statements made previously to the Court.  Burris may not be a lawyer but he is an intelligent man and was fully advised of Brindley's potential conflict of interest created by Brindley's concurrent representation of Guzman and Burris and its possible consequences, both by independent counsel and the Court, and he made a voluntary, strategic decision to waive that conflict and proceed to trial with the retained counsel of his choice.   Burris may deeply regret his decision, but the record conclusively demonstrates that he knowingly and voluntarily made that choice.  He cannot be heard to second-guess it now.

Because the record conclusively demonstrates that Burris, knowingly, voluntarily, and intelligently waived the conflict of interest after advice of independent counsel and appropriate inquiry by the Court, Ground 1 of his 2255

motion is denied without an evidentiary hearing or inquiry into whether an actual conflict of interest exists. *See Edelmann,* 458 F.3d at 807 (explaining that for a waiver to be valid the defendant must be apprised of the conflict, cognizant of the potential consequences of continuing with counsel, and aware of his right to obtain other counsel); *Bryant,* 766 F.2d at 377-78 (to ensure a valid conflict waiver, the court should advise defendant of potential dangers of conflict, provide the defendant an opportunity to ask questions about the nature and consequences of the conflict, and hold the hearing on the record for review); *Noe*, 601 F.3d at 791–92 (denying 2255 motion with an evidentiary hearing based on conflict of interest because defendant waived conflict).

### F. Ground Two: "Further Ineffective of Assistance of Counsel and Conflict Issues"

In Ground 2 of his 2255 motion, Burris contends that Brindley's full trial schedule and ongoing personal family issues amount to a potential conflict of interest requiring an evidentiary hearing and new trial. They do not. Brindley was involved as defense counsel in several ongoing criminal trials during the time Burris's case was pending, and he was allegedly overworked and exhausted from dealing with issues in his personal life.[5] The conflict alleged is one, at best, of attorney self-interest.

---

[5] Although Burris argues that Brindley had a "nervous breakdown," there is no evidence of that non-medical "diagnosis" in this record. Brindley only admits that he was "emotionally and

To resolve claims of ineffective assistance of counsel cases, the Court ordinarily applies *Strickland*, asking whether the petitioner has demonstrated that (1) his attorney's performance was deficient and outside the range of reasonable professional assistance and (2) he was prejudiced by his counsel's deficient performance to the extent that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. 466 U.S. 668, 687, 689, 694. However, in *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980), the United States Supreme Court held that a petitioner who "shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief" based on ineffective assistance of counsel. "Effect on representation means that the conflict caused the attorney's choice to engage or not to engage in particular conduct, not that the choice was prejudicial in any other way." *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004) (citation modified). The petitioner must "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was

---

physically exhausted" from the demands of back-to-back trial preparation and caring for his wife, who was distraught over the loss of an emotional support animal.

linked to the actual conflict." *Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir. 2006) (citation modified).

The Eighth Circuit Court of Appeals has not yet decided whether *Cuyler* or *Strickland* applies to a conflict of interest claim based on attorney self-interest. *See Sharp v. United States*, 132 F.4th 1094, 1099 (8th Cir. 2025). However, a petitioner who does not show that a conflict of interest actually affected the adequacy of his representation under *Cuyler* necessarily fails to meet *Strickland*'s "more stringent standard." *Id.* at 1099 (citation modified).

Here, Burris fails to demonstrate that Brindley's trial schedule or personal issues actually affected the adequacy of his representation under *Cuyler*; he necessarily fails to meet *Strickland*'s more stringent standard. Instead he offers only vague assertions that it should be "self-evident" that these issues created a conflict. ECF 1 at 25. It is not. That Brindley sought continuances in his various trials by citing his trial schedule is not unusual in the context of multi-defendant criminal trials, and Burris cannot demonstrate that these requests for continuances or accompanying workload in any way actually affected Brindley's performance in his representation of Burris in this case. Nor does this Court accept that it is "self-evident" that Brindley did not provide constitutionally effective representation to Burris just because Brindley was experiencing personal family issues at that time.[6]

---

[6] These issues are alleged to have taken place around the start of Burris's trial.

Simply put, lawyers are highly-skilled professionals who are expected to do their jobs even when life gets in the way.  There is no indication in this record that Brindley did not do this.  Brindley appeared for trial, ready to proceed, as scheduled.   He vigorously cross-examined witnesses and attacked the government's case.  That Burris was ultimately convicted does not demonstrate otherwise and is entirely consistent with the overwhelming strength of the government's evidence against him.[7]  And even if Brindley was not functioning at his best because of these issues, that does not automatically translate into a finding of ineffective assistance as "there is no constitutional entitlement to rhetorical excellence."  *United States v. Lance*, 2011 WL 7039460, at *9 (S.D. Ohio Dec. 5, 2011).

Burris points to Brindley's concurrent representation of Guzman and him as further evidence of Brindley's alleged conflict of interest and ineffective assistance in this case, alleging that it prevented Brindley from calling Guzman as a witness to contradict Roque's testimony.  Burris claims that Guzman could cast doubt on Roque's testimony that Burris traveled to Mexico with Roque and that Burris was not really part of the drug conspiracy.  Brindley avers that concerns about

---

[7] To reiterate, that evidence included: 15 witnesses; nearly 500 exhibits.; testimony from co-conspirators and investigating law enforcement officers; wiretaps in both recorded and text form; surveillance; confiscated drugs; evidence of a weapon; and, incriminating videographic and photographic evidence

negatively impacting Guzman's sentencing in the Illinois case prevented him from calling Guzman as a witness in Burris's case.

Although Burris waived this conflict (as discussed above), it also fails to meet the standards of *Cuyler* and *Strickland* because Burris cannot show that calling Guzman, an unindicated co-conspirator, as a witness in Burris's case was objectively reasonable under the facts of the case. In fact any such strategy would have been manifestly unreasonable. Even if Brindley had actually taken the government up on its offer to procure Guzman's presence for trial,[8] he could not compel Guzman to testify. And as I instructed Brindley, any such appearance by Guzman would have automatically resulted in my appointment of independent counsel to advise Guzman about his constitutional right against self-incrimination prior to his taking of the witness stand. ECF 363 in Criminal Case No. 4:17 CR 95 RWS. At that point, independent counsel would have advised Guzman against testifying and incriminating himself and his brother. Guzman would have undoubtedly followed that advice and refused to testify. So no matter what Burris and Brindley may insist that Guzman could have hypothetically said on Burris's behalf, the reality is that **Guzman could not be compelled to say anything in Burris's trial**. An "abstract or hypothetical set of 'what ifs' does not satisfy a

---

[8] Guzman was in custody outside the district and could not be compelled to appear for trial. However, the government agreed to have him moved here for trial upon request.

30

defendant's burden in proving an actual conflict of interest." *United States v. Reed*, 179 F.3d 622, 625 (8th Cir. 1999).  And although Burris submitted affidavits from an investigator and Brindley indicating what Guzman allegedly could have said in support of Burris's defense, **conspicuously absent from the motion and supporting materials is an affidavit from Guzman himself admitting that he would have willingly testified to these facts at Burris's trial and subjected himself and his brother to more criminal charges.  In fact, there is no supporting affidavit from Guzman attesting to the truth of any of these alleged facts and indicating a willingness to testify either at trial or an evidentiary hearing on this matter.**  This glaring omission is fatal to Burris's claim, which he bears the burden to prove, for he has utterly failed to demonstrate "how such a strategy could have been plausibly pursued."  *Noe*, 601 F.3d at 790-91.  I concur with the government's assessment that a more implausible scenario is difficult to imagine.  *See* ECF 13 at 31.

Brindley's failure to call Guzman as a witness also fails to meet the standards of *Cuyler* or *Strickland* because the evidence conclusively disproves any alleged testimony by Guzman that Burris did not go to Mexico with Roque. Although Guzman allegedly said that he was at the meeting in Mexico but Burris was not, *see* ECF 1-4 at 8, border crossing records demonstrate that Guzman left Mexico and came back to the United States days before the meeting even took

place.  ECF 13-1.  That evidence (produced in discovery to defense counsel in October of 2019), in combination with testimony from the border patrol agent and the border patrol photograph of Burris and Roque crossing back into the United States from Mexico together after the meeting with Avendano, eviscerates the credibility of Guzman as a so-called potential impeachment witness for the defense.  Irrespective of any potential conflict, a reasonable attorney would have made the decision not to call Guzman as a witness under these circumstances, even if Guzman were available and willing to testify.  *See Caban v. United States*, 281 F.3d 778, 786 (8th Cir. 2002) (denying motion for post-conviction relief because a reasonable defense attorney would not have called a witness and adopted the same trial strategy with or without an alleged conflict).   Here, as in *Noe*, "because these alternate strategies, the presentation of which would strain credulity in the absence of supporting evidence, were not objectively reasonable, [Burris] has not established that he was denied the effective assistance of counsel under *Cuyler*." 601 F.3d at 791 (citation modified).

   As Burris has failed to meet either the *Cuyler* or *Strickland* standards, his ineffective assistance of counsel claim fails.  Ground 2 of Burris's 2255 motion is denied.

### G. Ground Three: Ineffective Assistance of Appellate Counsel

Finally, in Ground 3 of his 2255 motion Burris argues in conclusory fashion that Brindley rendered ineffective assistance on appeal solely due to the alleged conflicts of interest identified above.  He provides no argument as to the precise nature of this claim, apparently content to rely on the arguments submitted in support of Grounds 1 and 2.  To the extent Ground 3 has not been waived, it is summarily denied for the same reasons set forth above.  To the extent this ground is construed as one arguing that Brindley was ineffective for failing to raise the issue of his alleged conflicts of interest on direct appeal, "counsel's failure to advance a meritless argument cannot constitute ineffective assistance." *Rodriquez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).  Ground 3 of Burris's 2255 motion is denied as meritless.

### H. I Will Not Issue a Certificate of Appealability

As Burris has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that Roy William Burris, Jr.'s motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that the motion to strike [14] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Burris has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 12th day of August, 2025.